IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| and ) | |
| ) | |
| STATE OF MONTANA, ) | |
| ) | CV-16-143-BLG-SPW-CSO |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | CONSENT DECREE |
| ) | |
| EXXONMOBIL PIPELINE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# TABLE OF CONTENTS

I.    JURISDICTION .......................................................................................................... 5

II.    PARTIES BOUND ..................................................................................................... 6

III.    DEFINITIONS .......................................................................................................... 6

IV.    GENERAL PROVISIONS ...................................................................................... 10

V.    NATURAL RESOURCE DAMAGE PAYMENT BY DEFENDANT ................................ 10

VI.    TRUSTEES' MANAGEMENT AND APPLICATION OF THE SETTLEMENT .......... 12

VII.    STIPULATED PENALTIES ................................................................................... 14

VIII.    COVENANT NOT TO SUE BY PLAINTIFFS ................................................................ 17

IX.    RESERVATION OF RIGHTS BY THE PLAINTIFFS ..................................................... 17

X.    COVENANT NOT TO SUE AND WAIVER OF CLAIMS BY THE DEFENDANT ........ 18

XI.    EFFECT OF SETTLEMENT ................................................................................. 19

XII.    NOTICES ................................................................................................................. 19

XIII.    RETENTION OF JURISDICTION ........................................................................ 21

XIV.    MODIFICATION .................................................................................................... 21

XV.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..................................... 22

XVI.    SIGNATORIES AND SERVICE ............................................................................ 22

XVII.    FINAL JUDGMENT ............................................................................................... 23

A.     WHEREAS, Plaintiffs, United States of America ("United States") and the State of Montana ("State") have filed a joint complaint in this action, asserting claims under Section 1002 of the Oil Pollution Act, as amended ("OPA"), 33 U.S.C. § 2702, and also as to the State under Section 75-10-715 of the Montana Comprehensive Environmental Cleanup and Responsibility Act (CECRA), against Defendant ExxonMobil Pipeline Company. The complaint alleges that (i) on or about July 1, 2011, Defendant discharged more than 1,500 barrels of crude oil from its Silvertip Pipeline into and upon the Yellowstone River and its adjoining shorelines (the "Discharge") near Laurel, Montana, (ii) the Discharge resulted in injuries to, destruction of, loss of, or loss of use of natural resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States and the State, (iii) the United States Department of the Interior ("DOI"), through the United States Fish and Wildlife Service ("USFWS") and the Bureau of Land Management ("BLM"), (collectively referred to herein as the "Federal Trustee") and the State, through the Montana Department of Justice Natural Resource Damage Program acting on behalf of the Governor ("State Trustee"), have incurred unreimbursed Natural Resource Damage Assessment Costs as a result of the Discharge, and (iv) Defendant is liable without limitation for natural resource damages for such injuries, destruction and losses, including Natural Resource Damage Assessment Costs, under OPA and CECRA.

B.     WHEREAS, the Defendant undertook cleanup actions pursuant to a July 6, 2011 Administrative Order issued by the United States Environmental Protection Agency, and under a February 28, 2012 Administrative Order on Consent between the Montana Department of Environmental Quality and the Defendant. Pursuant to the orders and under EPA and/or MDEQ oversight, the Defendant surveyed oiled areas, conducted required cleanup activities, and

conducted extensive environmental confirmation sampling of soils, sediments, groundwater, surface water, and public water supply.

      C.      WHEREAS, the Federal Trustee and State Trustee (collectively referred to herein as the "Trustees") are both trustees of Natural Resources that the Trustees contend are or were injured as a result of the Discharge, and previously entered into a memorandum of understanding providing a framework for coordinating assessment and restoration efforts. The Trustees performed surveys and collected significant ephemeral data related to riverine aquatic habitat, supported biota – including fish, terrestrial habitat and supported biota, birds, large woody debris piles, and services provided by the natural resources – and post-cleanup environmental conditions downstream of the Discharge. These surveys and data, which have been ongoing since the Discharge in 2011, indicate that the possibility of unknown conditions significantly impacting Natural Resources in the future is remote. Timely implementation of the restoration activities that this settlement makes possible will further benefit Natural Resources impacted by the Discharge.

      D.      WHEREAS, Defendant has previously reimbursed approximately $1,602,638.59 of Natural Resource Damage Assessment Costs incurred by the Trustees.

      E.      WHEREAS, the Trustees have issued for public comment a Draft Restoration Plan for the Yellowstone River July 2011 Oil Spill, as provided for under Title 15 C.F.R. § 990.55, and have invited public comment on the draft plan.

      F.      WHEREAS, by entering into this Consent Decree, Defendant does not admit the allegations in the complaint filed in this action.

G.   WHEREAS, the Parties agree that settlement of this matter without further litigation is in the public interest and that the entry of this Consent Decree is the most appropriate means of resolving this action.

H.   WHEREAS, the Parties agree, and by entering this Consent Decree the Court finds, that this Consent Decree: (1) has been negotiated by the Parties at arm's length, in good faith, (2) will avoid prolonged litigation among the Parties; and (3) is fair, reasonable, and furthers the objectives of OPA.

I.   The Defendant does not admit any liability arising out of the transactions or occurrences alleged in this action.

NOW, THEREFORE, without adjudication of any issue of fact or law, except as provided in Section I (Jurisdiction) below, and with the consent of the Parties,

IT IS ADJUDGED, ORDERED AND DECREED as follows:

## I.   JURISDICTION

1.   This Court has jurisdiction over the subject matter of this action pursuant to Section 1017(b) of OPA, 33 U.S.C. § 2717(b), and 28 U.S.C. §§ 1331 and 1345, and over the Parties to this action for the purpose of entry and enforcement of this Consent Decree. This Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Venue lies in the District of Montana pursuant to 33 U.S.C. § 2717(b) and 28 U.S.C. § 1391. Solely for the purposes of this Consent Decree or any action to enforce the Consent Decree, the Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Defendant shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree.

## II.    PARTIES BOUND

2.      The obligations of this Consent Decree apply to and are binding upon the Parties and each of their successors, assigns, or other entities or persons otherwise bound by law to comply with this Consent Decree.  Any change in ownership or corporate status of the Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the Defendant's or its successors' and assigns' rights or responsibilities under this Consent Decree.  Defendant shall not contest the right of any of the Plaintiffs to enforce the provisions of this Consent Decree.

## III.    DEFINITIONS

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in OPA or in the regulations promulgated by NOAA under OPA, 15 C.F.R. Part 990, shall have the meaning assigned to them in OPA or in such regulations, as applicable. Whenever the following terms are used in this Consent Decree and incorporated hereunder, the definition specified hereinafter shall apply.

a.      "BLM" shall mean the Bureau of Land Management, an agency of the United States Department of the Interior.

b.      "CECRA" shall mean the Montana Comprehensive Environmental Cleanup and Responsibility Act, 75-10-701 et seq., Montana Code Annotated.

c.      "Consent Decree" shall mean this Consent Decree.

d.      "Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next Working Day.

e.   "Defendant" shall mean ExxonMobil Pipeline Company.

f.   "Discharge" shall mean the discharge of oil to the environment from Defendant's Silvertip oil transmission pipeline on or about July 1, 2011.

g.   "DOI" shall mean the United States Department of the Interior.

h.   "Federal Interest," as that term is used in Section VII (Stipulated Penalties) of this Consent Decree, shall mean interest earned at the rate and by the method specified in 28 U.S.C. § 1961(a) and (b).

i.   "Federal Trustee" shall mean the Secretary of the United States Department of the Interior, represented by USFWS and the BLM, as the federal official designated to act on behalf of the public as trustee for natural resources under OPA Section 1006(b)(2), 33 U.S.C. § 2706(b)(2).

j.   "MDEQ Administrative Order on Consent" shall mean the Administrative Order on Consent between Defendant and the Montana Department of Environmental Quality entitled, "In the Matter of Violations of the Montana Water Quality Act by ExxonMobil Pipeline Company, at Silvertip Pipeline, Laurel, Yellowstone County, Montana (FID #2103) Administrative Order on Consent," Docket No. WQA-12-08, dated February 28, 2012.

k.   "Montana Natural Resource Damage Program" shall mean an entity within the Montana Department of Justice.

l.   "Natural Resources" shall mean land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States or the State.

m.   "Natural Resource Damages" shall mean any damages recoverable by the United States or the State, as Trustees or *parens patriae* on behalf of the public, under Section

7

1002(b)(2)(A) of OPA, or any other Federal law, State law under any theory without limitation, or common law, as compensation for injury to, destruction of, loss of, or loss of use of Natural Resources and natural resource services they provide, resulting from a release or threat of release of oil linked to the Discharge (including any injury, destruction or losses to Natural Resources from removal actions to address the Discharge). Natural Resource Damages include, without limitation: (i) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and natural resources services, or of acquisition of equivalent resources; (ii) Natural Resource Damage Assessment Costs; (iii) the costs of planning and monitoring such restoration activities; and (iv) any other compensation for diminution in value or loss of use or non-use values; resulting from the Discharge.

        n.     "Natural Resource Damage Assessment Costs" shall mean, for purposes of this Consent Decree, all costs within the meaning of Sections 1002(b)(2)(A) and 1006(d)(1)(C) of OPA, 33 U.S.C. §§ 2702(b)(2)(A), 2706 (d)(1)(C), and Section 75-10-715(2)(b) of CECRA incurred by the Trustees resulting from the Discharge, including, but not limited to, direct, indirect, and administrative costs in assessing any injury to, destruction of, loss of, or loss of use of Natural Resources resulting from the Discharge, related restoration planning activities, and all costs directly or indirectly related to negotiating this Consent Decree.

        o.     "NRDAR Fund" shall mean DOI's Natural Resource Damage Assessment and Restoration Fund.

        p.     "Oil Spill Liability Trust Fund" shall mean the Oil Spill Liability Trust Fund established pursuant to 26 U.S.C. §§ 4611 and 9509.

        q.     "OPA" shall mean the Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484, 33 U.S.C. §§ 2701-2762.

8

r. "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

s. "Parties" shall mean the Plaintiffs and the Defendant.

t. "Plaintiffs" shall mean the United States and the State of Montana.

u. "Restoration Plan" shall mean the "Restoration Plan for the July 1, 2011 Yellowstone River Oil Spill" developed by the Trustees in accordance with OPA and its underlying regulations at 15 C.F.R. §§ 990.53 - 990.56, and any future revisions or amendments thereof.

v. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

w. "State" shall mean the State of Montana.

x. "State Interest" as that term is used in Section VII (Stipulated Penalties) of this Consent Decree, shall mean interest earned at the rate and by the method specified for judgments in Section 25-9-205, Montana Code Annotated.

y. "State Trustee" shall mean the Governor of the State of Montana, designated to act on behalf of the public as trustee for natural resources under OPA §1006(b)(3), 33 U.S.C. § 2706(b)(3), represented by the Montana Natural Resource Damage Program.

z. "Subparagraph" means a portion of this Consent Decree identified by a lower case letter or an arabic numeral in parentheses.

aa. "Trustees" shall mean the designated Federal Trustee and the State Trustee.

bb.    "United States" shall mean the United States of America, on behalf of the DOI, including USFWS and BLM, including all agencies, bureaus, administrations or departments of DOI, USFWS, and BLM.

cc.    "USFWS" shall mean the United States Fish and Wildlife Service.

## IV.    GENERAL PROVISIONS

4.    The mutual objectives of the Parties in entering into this Consent Decree are: (i) to provide for restoration, rehabilitation, replacement, or acquisition of the equivalent of the Natural Resources that the Trustees contend are or were injured, destroyed, or lost as a result of the Discharge and subsequent removal actions to address the Discharge, including restoration, rehabilitation or replacement of lost natural resource services; (ii) to provide for payment of unreimbursed Natural Resource Damage Assessment Costs incurred by Trustees; (iii) to resolve the Defendant's liability for Natural Resource Damages as provided herein; and (iv) to avoid potentially costly and time-consuming litigation.

5.    The Effective Date of this Consent Decree shall be the date that this District Court enters the Consent Decree.

## V.    NATURAL RESOURCE DAMAGE PAYMENT BY DEFENDANT

6.    Not later than thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall establish an interest-bearing account in a federally insured bank duly chartered in the State of Montana and remit to the escrow account twelve million dollars ($12,000,000). The Defendant will require the escrow agreement to be operated in accordance with this Section V. Defendant shall simultaneously send written notice of payment to the escrow account, a copy of any transmittal documentation and a copy of the escrow agreement to the Plaintiffs in accordance with Section XII (Notices) of this Consent Decree. If an appeal of the Consent Decree entry and judgment is not filed within sixty (60) days of the Effective Date, the twelve

10

million dollars ($12,000,000) plus all accrued interest from the escrow account shall within ten

(10) days be distributed for the joint use of the Trustees as set forth in Paragraphs 7 and 8 of this

Section V. If an appeal of the Consent Decree entry and judgment is filed within sixty (60) days

of the Effective Date, and the District Court's judgment is affirmed, the twelve million dollars

($12,000,000) plus all accrued interest from the escrow account shall within ten (10) days be

distributed for the joint use of the Trustees as set forth in Paragraphs 7 and 8 of this Section V. If

an appeal of the Consent Decree entry and judgment is filed and the District Court's judgment is

overturned then the twelve million dollars ($12,000,000) plus all accrued interest from the

escrow account shall be returned to Defendant.

      7.      The sum of $2,501,309.00 plus accrued interest on that amount shall be paid

from the escrow account to the United States. Such payment shall be used by the Federal

Trustee for the purposes set forth in Section VI (Trustees' Management and Application of the

Settlement). The payment required by this Paragraph shall be made by FedWire Electronic

Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written

instructions to be provided to the Defendant by the Financial Litigation Unit of the U.S.

Attorney's Office for the District of Montana following entry of this Consent Decree by this

Court. At the time of payment, Defendant shall send a copy of the EFT authorization form and

the EFT transaction record, together with a transmittal letter, to the United States in accordance

with Section XII of this Consent Decree (Notices) and to the U.S. Department of the Interior,

NRDAR Program, Attn: Fund Restoration Manager, 1849 C Street NW, Mailstop 4449,

Washington, DC 20240. The transmittal letter shall state that the payment is for Natural

Resource Damages in *United States v. ExxonMobil Pipeline Company*, and shall reference the

civil action number, DOJ Case Number 90-5-1-1-11163, and the NRDAR Fund Account No.

14X5198. Any payments received by the Department of Justice after 4:00 pm Eastern Standard Time shall be credited on the next business Day.

8.      The sum of $9,498,691.00 plus accrued interest on that amount shall be paid from the escrow account to the State. Payments to the State shall be used by the State for the purposes set forth in Section VI (Trustees' Management and Application of the Settlement). All payments made to the State pursuant to the Consent Decree, including any State Interest, shall be made by the Defendant to the State by electronic funds transfer in accordance with instructions to be provided by the State. Defendant shall contact the Fiscal Bureau Chief of the Central Services Division of the Montana Department of Justice at least 48 hours prior to initiating a transfer to provide notice of the date, time, and amount of the expected transfer and to confirm the wiring instructions, bank routing, and account numbers. If the Fiscal Bureau Chief of the Montana Department of Justice is unavailable, the Defendant shall contact NRDP representatives identified in Section XII (Notices). The State shall deposit the payment received, and any subsequent interest and earnings, into the account described in Paragraph 10 below. This account shall be operated and maintained by the State as set forth in this Consent Decree. No portion of the amounts deposited under this Consent Decree, or any interest or earnings thereon, is to be treated as State General Fund money, nor is any portion to be converted or transferred to the State General Fund. The monies paid to the State, and the interest and earnings thereon, shall be available only for the respective purposes described for the established account and for no other purpose. Any payments received by the State after 4:00 pm Mountain Standard Time shall be credited on the next business Day.

## VI.   TRUSTEES' MANAGEMENT AND APPLICATION OF THE SETTLEMENT

9.      The total amount Defendant pays to the United States pursuant to Paragraph 7 shall be managed as follows:

12

a. The United States shall deposit $2,285,094.04 plus accrued interest of the total amount received from Defendant into the Yellowstone/Silvertip NRD Account, a distinct account within the NRDAR Fund. The Federal Trustee shall use the principal amount and any interest or investment return accrued on the Yellowstone/Silvertip NRD Account to restore, replace, rehabilitate, or acquire the equivalent of the natural resources Trustees contend were injured or lost as a result of the Discharge, including, but not limited to, design, implementation, oversight, any operation and maintenance, monitoring, permitting (as necessary), NEPA analysis, and other requirements related to such activities, and to reimburse the Federal Trustee for their Natural Resource Damage Assessment Costs. The Federal Trustee shall not make any charge against this account for investment or management services.

b. The United States shall deposit $216,214.96 in the Oil Spill Liability Trust Fund to reimburse the fund for Natural Resource Damage Assessment Costs related to the Discharge previously paid to the Federal and State Trustees.

10. The total natural resource damage payment to be paid by the Defendant to the State pursuant to Paragraph 8 shall be managed by the State as follows:

a. The State has established the Yellowstone River 2011 Oil Spill Account. The State shall deposit $9,498,691.00 plus accrued interest of the total amount received from the Defendant into the Yellowstone River 2011 Oil Spill Account. The State Trustee shall use the principal amount and any interest or investment return on the Yellowstone River 2011 Oil Spill Account to restore, replace, rehabilitate, or acquire the equivalent of the natural resources Trustees contend were injured or lost as a result of the Discharge, including, but not limited to, design, implementation, oversight, any operation and maintenance, monitoring, permitting (as necessary), NEPA/MEPA analysis, and other requirements related to such activities, and to

13

reimburse the State for its Natural Resource Damage Assessment Costs. The State Trustee shall not make any charge against this account for investment or management services.

11.     The allocation of funds for specific projects or categories of projects will be contained in the Restoration Plan prepared jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment is being provided. The Trustees will jointly direct expenditure of the funds consistent with the Restoration Plan and the Trustees' memorandum of understanding regarding the coordination and implementation of Natural Resource Damage Assessment activities. The Trustees jointly retain the ultimate authority and responsibility to use the Settlement Amount to restore Natural Resources in accordance with applicable law, this Consent Decree, and any memorandum or other agreement between them.

## VII.    STIPULATED PENALTIES

12.     Assessment of Stipulated Penalties. For each failure to make any payment required under Paragraphs 6, 7, and 8 when due, Defendant shall pay a stipulated penalty as provided below in this Section VII.

13.     Stipulated penalties shall accrue at a rate of two thousand dollars ($2,000) per day for each of the first thirty (30) days that a payment is late, and at the rate of five thousand dollars ($5,000) per day for each additional day that a payment is late. Stipulated penalties shall begin to accrue on the day after a required payment is due, and such penalties shall continue to accrue until the date on which the required payment is received. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

        a.      In the case of late payments due under Paragraph 6, above, one-half of the accrued stipulated penalties, together with any Federal Interest thereon under Paragraph 16 shall

14

be paid to the United States in the manner specified in Paragraph 17.a, one-half of the accrued penalties, together with any State Interest thereon under Paragraph 16, shall be paid to the State in the manner specified in Paragraph 17.b.

14.     Notice and Demand.  In the event of a failure to make a timely payment required under Paragraph 6, above, either Plaintiff may provide Defendant with a written notice of noncompliance and a demand for payment of stipulated penalties, in the manner specified in Section XII of this Consent Decree (Notices).  In the case of any failure to make a timely payment required under Paragraphs 7 or 8, the Party entitled to receive the payment may provide Defendant with a written notice of noncompliance and a demand for stipulated penalties, in the manner specified in Section XII of this Consent Decree (Notices).  However, stipulated penalties for any violation of Paragraphs 6, 7, or 8, above, shall accrue as provided in Paragraph 13, above, regardless of whether the Defendant has been notified of a violation.

15.     Defendant shall pay stipulated penalties as provided below in this Section VII within thirty (30) days of receipt of written demand for such stipulated penalties.

16.     Interest.  If the Defendant fails to pay any stipulated penalties when due, Defendant shall pay interest on the unpaid balance of any stipulated penalties due, of which one-half of the accrued interest, shall be paid to the United States as Federal Interest in the manner specified in Paragraph 17.a, and one-half of the accrued interest, shall be paid to the State as State Interest in the manner specified in Paragraph 17.b.  Such interest shall begin to accrue on the date thirty (30) days past the demand therefor.

17.     Payment Instructions.  All stipulated penalty and interest payments due under this Section VII shall be accompanied by a reference to this Consent Decree, be identified as "Stipulated Penalties," and reference "Yellowstone River July 2011 Oil Spill."  Notice of

payment of a stipulated penalty shall be made to the appropriate Trustees in the manner specified in Section XII (Notices).

a. Defendant shall pay any stipulated penalties and Federal Interest due to the United States pursuant to this Section VII by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Montana. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for stipulated penalties owed pursuant to the Consent Decree, and shall reference the case name, civil action number, DOJ Case Number (#90-5-1-1-10332), and the violations for which the stipulated penalties are being paid to the United States, in accordance with Section XII of this Decree (Notices).

b. Defendant shall pay any stipulated penalties and any related State Interest to the State by electronic funds transfer in accordance with instructions to be provided by the State. Such funds shall be deposited by the State in a general restoration account for assessment activities.

18. Notwithstanding any other provision of this Section, any Party entitled to a payment under Paragraphs 6, 7 or 8, may, in its unreviewable discretion, waive any portion of the stipulated penalties due to the Party that have accrued pursuant to this Consent Decree, as well as any related portion of the interest that has accrued thereon.

19. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Defendant's violation of this Consent Decree or of the statutes

and regulations upon which it is based.

## VIII.    COVENANTS NOT TO SUE BY PLAINTIFFS

20.    Except as provided in Section IX (Reservation of Rights by Plaintiffs), below, in consideration of the payments that have been and will be made by Defendant under this Consent Decree, the United States and the State covenant not to sue or take administrative action against the Defendant for Natural Resource Damages. Except as provided in Paragraph 21, below, the covenants not to sue set forth in this paragraph extend only to the Defendant and do not extend to any other person.

21.    The covenants not to sue set forth in Paragraph 20 also extend to (i) Exxon Mobil Corporation; (ii) Defendant's and Exxon Mobil Corporation's affiliates, officers, directors, employees, contractors, attorneys and representatives but only to the extent that liability is based on actions performed by such persons in their capacities as affiliates, officers, directors, employees, contractors, attorneys and representatives of Defendant and Exxon Mobil Corporation; and (iii) to successors and assigns of Defendant and Exxon Mobil Corporation, but only to the extent that liability is based solely on such person's status as a successor or assign of the Defendant or Exxon Mobil Corporation.

22.    The covenants not to sue in Paragraph 20, above, are conditioned upon receipt of all payments required by Section V (Natural Resource Damage Payment by Defendant) and, as applicable, Section VII (Stipulated Penalties) of this Consent Decree.

## IX.    RESERVATION OF RIGHTS BY THE PLAINTIFFS

23.    General Reservations of Rights. Notwithstanding any other provision of this Consent Decree, Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Defendant and the entities specified in Paragraph 21 with respect to all matters other than those expressly specified in the covenants not to sue set forth in Paragraph 20, including without

limitation the following:

      a.     Claims based on a failure of Defendant to meet a requirement of this

Consent Decree;

      b.     Claims to seek or obtain relief other than for Natural Resource Damages;

      c.     As to the United States, claims for civil penalties or injunctive relief

relating to the Discharge, including claims under 33 U.S.C. §§ 1319 or 1321;

      d.     As to the United States, claims under 33 U.S.C. § 2702(a) and (b)(1)(A)

for removal costs relating to the Discharge;

      e.     Claims based on violations of State or Federal law that occur after the date

of lodging of this Consent Decree;

      f.     Claims for criminal liability; And

      g.     As to the State, claims against Defendant to the extent that such claims

were reserved in the MDEQ Administrative Order on Consent, except for claims reserved under

Paragraph 96(b) which are hereby released. Except as provided in this Subparagraph 23.g,

nothing in this Consent Decree shall be construed in any way to affect any provision or any

obligation of Settling Defendant under the MDEQ AOC.

## X.    COVENANT NOT TO SUE BY THE DEFENDANT

24.     Defendant hereby covenants not to sue and agrees not to assert or maintain any

claims or causes of action against the United States or the State or their respective officials,

employees, agents, contractors, departments, agencies, attorneys, directors, representatives,

administrations and bureaus, related to Natural Resource Damages resulting from the Discharge,

including but not limited to any direct or indirect claim under OPA §§ 1007, 1008, 1012, 1013 or

1015(a), 33 U.S.C. §§ 2707, 2708, 2712, 2713, 2715(a), the Environmental Quality Protection

Fund (established pursuant to Section 75-10-704, Montana Code Annotated), or the Orphan

18

Share Account (established pursuant to Section 75-10-743, Montana Code Annotated).

Defendant hereby covenants and agrees not to assert or maintain, any claims against the Oil Spill

Liability Trust Fund relating to any Natural Resource Damages resulting from the Discharge, or

any claims for recovery of any costs incurred by Defendant pursuant to this Consent Decree. If

Exxon Mobil Corporation and its affiliates, or any affiliate of the Defendant, pursues any claim

for such costs or damages against the United States or the State, Defendant shall indemnify the

Party for all costs incurred as a result of such claims.

25.     Defendant hereby releases claims reserved under Paragraph 100(a) of the

MDEQ Administrative Order on Consent.

## XI.     EFFECT OF SETTLEMENT

26.     Nothing in this Consent Decree shall be construed to create any rights in, or

grant any cause of action to, any person not a Party to this Consent Decree.

27.     In any subsequent administrative or judicial proceeding initiated by the United

States or the State relating to the Discharge, the Defendant shall not assert, and may not

maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral

estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the

claims raised by the United States or the State in the subsequent proceeding were or should have

been brought in the instant case; *provided, however*, that nothing in this Paragraph affects the

enforceability of the Covenant Not To Sue, as set forth in Section VIII.

28.     Nothing in this Consent Decree shall establish or be construed to establish any

liability on the part of Defendant, or be used as evidence of any such liability on the part of the

Defendant, in connection with any claims, including other claims arising from the Discharge.

## XII.     NOTICES

29.     Whenever, under the terms of this Consent Decree, notice is required to be

given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States and the State, and the Defendant, respectively.

As to the United States:

As to the Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-08748)
P.O. Box 7611
Washington, D.C. 20044-7611    601 D Street, N.W. – Room 2121
(for U.S. Mail)    Washington, DC 20004
    (for overnight delivery)

As to DOI:

Karen J. Nelson
U.S. Fish and Wildlife Service - Montana Field Office
Environmental Contaminants Specialist
585 Shepard Way, Suite 1
Helena, MT 59601
Phone 406.449.5225 X210
Fax    406.449.5339

Ann C. Umphres
Attorney-Advisor
U.S. Department of the Interior
Office of the Solicitor, Rocky Mtn. Region
755 Parfet St., Suite 151
Lakewood, CO 80215
TEL: 303-445-0636
FAX: 303-231-5363

As to the State:

Harley R. Harris
Lawyer/Program Manager
Douglas H. Martin
Restoration Program Chief
Attn: Yellowstone River July 2011 Oil Spill
Natural Resource Damage Program
Montana Department of Justice
1720-9th Avenue
P.O. Box 201425
Helena, MT 59620-1425


As to Defendant:

Kevin J. Vaughan
Counsel, Environmental & Safety
Exxon Mobil Corporation
22777 Springwoods Village Pkwy., E2.3B.508
Spring, TX  77389

Len Racioppi
ExxonMobil Environmental Services Company
Science 2.2B.282
22777 Springwoods Village Parkway
Spring, TX  77389


## XIII.    RETENTION OF JURISDICTION

30.    The Court shall retain jurisdiction to modify and enforce the terms and
conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary
or appropriate for the construction or execution of this Consent Decree.

## XIV.    MODIFICATION

31.    Any material modification of this Consent Decree shall be made only by written
agreement of the Parties and shall take effect only upon approval by the Court.

32.    Any non-material modification of this Consent Decree shall be made by written
agreement of the Parties, and shall not take effect until filed with the Court.  Nothing in this

Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

33. The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

34. Economic hardship or changed financial circumstances of a Defendant shall not serve as a basis for modification of this Consent Decree.

## XV. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

35. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States and the State each reserve the right to withdraw or withhold consent if comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. The Defendant consents to the entry of this Consent Decree without further notice. If for any reason the Court should decline to approve this Consent Decree in the form presented, or if approval and entry is subsequently vacated on appeal of such approval and entry, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVI. SIGNATORIES AND SERVICE

36. The undersigned representatives of the Defendant, the United States, and the State each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document. This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

37. The Defendant hereby agrees not to oppose entry of this Consent Decree by this

22

Court or to challenge any provision of this Consent Decree unless the United States or the State has notified the Defendant in writing that it no longer supports entry of the Consent Decree.

38.    Defendant shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of the Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons.  The Parties agree that the Defendant needs not file answers to the complaint in this action unless or until:  (i) the United States or the State has notified Defendant in writing that it no longer supports entry of this Consent Decree; or (ii) the Court expressly declines to enter this Consent Decree.

## XVII.    FINAL JUDGMENT

39.    This Consent Decree constitutes the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

40.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Defendant. The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 12th DAY OF Dec. , 2016.

Susan P. Watters
UNITED STATES DISTRICT JUDGE
District of Montana

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Natural Resource Damages Relating to July 2011 Discharge of Oil into the Yellowstone River from ExxonMobil Pipeline Company's Silvertip Pipeline:

FOR THE UNITED STATES OF AMERICA

Date: _9/16/16_

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: _____

JAMES D. FREEMAN
Environmental Enforcement Section
Environment and Natural Resources Division
999 18th Street
South Terrace Suite 370
Denver, CO 80202

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Natural Resource Damages Relating to July 2011 Discharge of Oil into the Yellowstone River from ExxonMobil Pipeline Company's Silvertip Pipeline:

FOR THE UNITED STATES OF AMERICA

Date: _____     _____

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: 9/16/16     _____

JAMES D. FREEMAN
Environmental Enforcement Section
Environment and Natural Resources Division
999 18th Street
South Terrace Suite 370
Denver, CO 80202

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Natural Resource Damages Relating to July 2011 Discharge of Oil into the Yellowstone River from ExxonMobil Pipeline Company's Silvertip Pipeline:

Date: 9 - 20 - 2016

MICHAEL W. COTTER
United States Attorney
District of Montana

Date: 9 - 20 - 2016

MARK SMITH
Assistant United States Attorney
District of Montana

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Natural Resource Damages Relating to July 2011 Discharge of Oil into the Yellowstone River from ExxonMobil Pipeline Company's Silvertip Pipeline:

FOR THE STATE OF MONTANA

Date: _Sept. 16, 2016_

The Honorable STEVE BULLOCK
Governor of Montana
State Capitol
Helena, Montana

Date: _16 September 2016_

TIM FOX
Attorney General

Date: _9/16/2016_

HARLEY R. HARRIS
Supervising Assistant Attorney General
MARY CAPDEVILLE
Assistant Attorney General
Montana Department of Justice
Natural Resource Damage Program
1720 Ninth Avenue
P.O. Box 201425
Helena, Montana 59620-1425

27

THE UNDERSIGNED PARTY enters into this Consent Decree Regarding Natural Resource Damages Relating to July 2011 Discharge of Oil into the Yellowstone River from ExxonMobil Pipeline Company's Silvertip Pipeline:

FOR DEFENDANT EXXONMOBIL PIPELINE COMPANY

Date: _____          _____
                                        9/16/2016    GERALD S. FREY
                                                     President

Person designated to accept service of process on behalf of ExxonMobil Pipeline Company.

Kevin J. Vaughan
Counsel, Environmental & Safety
Exxon Mobil Corporation
22777 Springwoods Village Pkwy., E2.3B.508
Spring, TX 77389